UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| CHARLES GREENE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:05-CV-617 AS |
| | ) | |
| BERT SHIRK, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**

On September 29, 2005, Plaintiff Charles Greene (Greene), proceeding *pro se*, filed a complaint alleging he was discriminated against because of his race in violation of Title VII and 42 U.S.C. § 1981. On November 20, 2006, Defendants Venture Technologies LLC, *et al.*, (Venture) filed a motion for summary judgment. On December 19, 2006, Greene filed his response, and on January 3, 2007, Venture filed its reply. On that same day, Venture also filed a motion to strike. The Court now enters its report and recommendation on all pending matters in this case.

**I.     PROCEDURAL HISTORY**

On January 10, 2005, Greene filed a claim of discrimination with the South Bend Human Rights Commission, which subsequently was forwarded to the Equal Employment Opportunity Commission (EEOC). (Plaintiff's Compl. 4-7.) On August 2, 2005, the EEOC issued Greene a right to sue notice. (Id. 4.) On September 29, 2005, Greene filed his complaint in this Court. On November 3, 2005, Greene's case was dismissed because he failed to pay the appropriate filing fee. However, his case was re-opened on November 17, 2005, because he promptly paid his filing fee subsequent to his dismissal.

On November 20, 2006, Venture filed a motion for summary judgment.  On December 19, 2006, Greene filed his response.  On January 3, 2007, Venture filed a reply in support of its motion and a motion to strike Greene's response.  On January 10, 2007, these matters were fully referred to the undersigned.   This Court may issue a report and recommendation on these motions pursuant to its referral order and 28 U.S.C. § 636 (b)(1)(B).

    A.    <u>Venture's Motion to Strike</u>

Because this Court has decided that Venture is entitled to summary judgment even after considering all of Greene's responses and evidence, Venture's motion to strike should be **DENIED AS MOOT** [Doc. No. 60].

**II.**    **ANALYSIS**

    A.    <u>Facts</u>

Venture is a manufacturer and primarily produces chassis and related components for tent campers and recreational vehicles (RV's).  (Defendant's Ex. 1, Affidavit of Bert Shirk ¶ 2.)  Venture has approximately 200 employees with a 175 involved in production.  (Id. ¶ 5.)  Generally, Venture divides its production employees into three groups, welders, electrocoaters, and final assemblers.  (Id.)

Greene is an African American who has worked as a welder for Venture since April 20, 2004.  (Id ¶ 21; P's Compl. 3.)  Bert Shirk (Shirk), the production supervisor, hired Greene.  (Shirk Aff. ¶ 21.)  Welders at Venture were divided into three groups: parts welders, RV welders, and tent camper welders.  (Shirk Aff. ¶ 11.)  Few if any other African Americans worked at Venture, and only two African Americans worked as tent camper or RV welders.

(Plaintiff's Opposition to Summary Judgment 1.)  When Greene first started working for Venture, he was a parts welder.  (Id. ¶ 21.)

Parts welders only received an hourly pay wage.  (Id. ¶ 18.)  As a result, Greene received an hourly wage of $12.50 per hour.  (Defendant's Ex. 6, Affidavit of Jennifer Miller ¶ 11; Defendant's Ex. 2, Deposition of Charles Green 75.)[1]  RV and tent welders, though, were paid differently.  Tent welders received a base hourly rate of $8.70 per hour, but they also received bonuses based on the amount of units they produced in a given day.  (Shirk Aff. ¶ 17.)  RV welders received a varying base hourly pay, which never exceeded $12 per hour,  plus a production bonus.  (Id. ¶ 12.)  Few parts welders ever transferred to an RV or tent camper welder position.  (Id. ¶ 19.)  The bonus pay structure of these positions increases pressure to work quickly and efficiently in these positions as well.  (Greene Dep. 148.)

However, Greene was one individual who was transferred from a parts welder position to a tent camper welder position.  (Shirk Aff. ¶ 19.)  As a parts welder, Greene basically welded the same pieces together over and over.  (Id. ¶ 20.)  The tent welder position was much more difficult.  (Id.)  Tent welders must review a print before they begin welding.  (Id. ¶ 16.)  Tent welders must understand and comprehend multiple prints because the specifications for different tent camper chasis frequently changed.  (Id. ¶ 20.)  Also, tent welders generally work in teams.[2]

---

[1]Initially, Greene had a per hour wage of $12, but he received a 50 cent raise later. (Greene Dep. 52-53, 75).

[2]Because Greene was transferred to a tent welder position, the specifics regarding RV welders are not relevant.  Therefore, this Court will only cover the specifics regarding tent welders.

(Id. ¶ 13.)  Two of the tent welders construct a bulk of the tent camper while the third member of the team is a finishing welder who does the finishing touches on the frame.  (Id. ¶ 16.)

Greene worked as a tent camper welder from October 6, 2004, till November 15, 2004. (Shirk Aff. ¶ 32.)  After a few weeks of working as a tent welder, Greene's co-workers began to complain about his lack of productivity.  (Greene Dep. 152; Shirk Aff. ¶ 42.)  Essentially, they complained that Greene was slowing the team down, which adversely affected their bonus compensation.  (Id.)  Greene also made incorrect welds or mistakes as a tent camper welder. (Greene Dep. 151-52; Shirk Aff. ¶ 43.)  On or about November 15, 2004, Shirk returned Greene to the position of parts welder because of poor performance in the tent camper department. (Greene Dep. 129; Shirk Aff. ¶ 46.)

### B. Summary Judgment Standard

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Lawson v. CSX Transp., Inc., 245 F.3d 916, 922 (7th Cir. 2001).  In determining whether a genuine issue of material fact exists, this Court must construe all facts in the light most favorable to the nonmoving party as well to draw all reasonable and justifiable inferences in favor of that party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); King v. Preferred Technical Group, 166 F.3d 887, 890 (7th Cir. 1999).  To overcome a motion for summary judgment, the nonmoving party cannot rest on the mere allegations or denials contained in its pleadings.  Rather, the nonmoving party must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial. Celotex v.

Catrett, 477 U.S. 317, 322-23 (1986); Robin v. Espo Eng'g Corp., 200 F.3d 1081, 1088 (7th Cir. 2000). Where a factual record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing Bank of Ariz. v. Cities Serv.s Co., 391 U.S. 253, 289 (1968)).

      C.     Venture's Motion for Summary Judgment

Greene's response to Venture's motion for summary judgment consists of a three page written response that simply denies Venture's claims are true and claims Venture's evidence is inaccurate. Greene also submitted some 40 pages of documents, which includes diagrams with, often times illegible, hand written notes and incident reports. Greene does not submit any affidavits, depositions, or other admissible evidence that denies or contradicts the evidence submitted by Venture to create a genuine issue of fact. Even though this Court liberally construes *pro se* proceedings, "a lawsuit is not a game of hunt the peanut. Employment discrimination cases are extremely fact-intensive, . . . district courts are [not] obliged . . . to scour the record looking for factual disputes." Greer v. Bd. of Educ. of City of Chi., Ill., 267 F.3d 723, 727 (7th Cir. 2001). Despite Greene's insufficient response, this Court will graciously consider all of Greene's allegations in deciding if there is a genuine issue as to any material fact.

To prove racial discrimination under Title VII or § 1981, Greene may proceed either with direct evidence or under the burden shifting method of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Velez v. City of Chi., 442 F.3d 1043, 1049 (7th Cir. 2006). Even under § 1981, "[i]t is well settled that the methods and order of proof applicable to a claim of disparate

5

treatment under Title VII are equally availing under § 1981."[3]   Randle v. LaSalle Telecommunications, Inc., 876 F.2d 563, 568 (7th Cir. 1989).  Direct evidence can either be 1) an admission by the decision maker that his actions were based on the prohibited discrimination or 2) a convincing mosaic of circumstantial evidence that points directly to a discriminatory reason for the employer's action.  Davis, 368 F.3d at 783; Chiaramonte v. Fashion Bed Group, Inc., 129 F.3d 391, 396 (7th Cir. 1997); Radue v. Kimberly-Clark Corp., 219 F.3d 612, 616 (7th Cir. 2000).  Greene offers no evidence that constitutes an admission by a decision maker that Greene was moved or treated differently because of his race.  Furthermore, Greene offers no mosaic of evidence that points directly to discrimination because of his race as the reason for Venture's actions.   Nothing Greene offers constitutes direct evidence.

Because Greene does not offer direct evidence of discrimination, this Court must consider whether Green has provided sufficient evidence under the burden shifting method of McDonnel Douglas to survive summary judgment.  See e.g. Blise v. Antaramian, 409 F.3d 861, 866 (7th Cir. 2005) (analyzing a plaintiff's claim under burden shifting method because plaintiff did not offer direct evidence or argue that it existed).

        1.      Greene fails to establish a prima facie case of discrimination

---

[3]This Court notes that Venture first argues that Greene cannot maintain a claim against the individual defendants in their individual capacity.  Venture is correct that Title VII does not provide for individual liability against agents of employers.  See Sattar v. Motorola, Inc., 138 F.3d 1164 (7th Cir. 1998).  However, Greene appears to make identical claims against the individual defendants under 42 U.S.C. § 1981.  A cause of action may be brought against individuals under § 1981.  See Patel v. Brd. of Governors of State Colleges & Univ.s, 1997 WL 399644 at 3 (N.D. Ill. 1997). Still, because Greene has failed to present any evidence of discrimination under either Title VII or § 1981, the distinction between Greene's Title VII claims and § 1981 and whether Greene's claims against the individuals should be maintained is a moot issue.

Under the burden shifting method Greene must establish by a preponderance of the evidence that 1) he was a member of a protected class, 2) similarly situated employees outside of the protected class were treated more favorably, 3) he suffered a materially adverse employment action, and 4) he performed his job satisfactorily.  Velez, 442 F.3d at 1049-50 (citing O'Neal v. City of Chi., 392 F.3d 909, 911 (7th Cir. 2004)); see also McDonnell Douglas Corp., 411 U.S. at 802; Williams v. Williams Elecs., Inc., 856 F.2d 920, 922-23 (7th Cir. 1988).

Greene cannot establish that he was performing his job satisfactorily.  One must perform his job to the employer's legitimate expectations at the time of the adverse employment action.  Luckie v. Ameritech Corp., 389 F.3d 708, 715 (7th Cir. 2004).  Greene admits that he botched several welds while working on the finishing table as a tent camper welder.  (Greene Dep. 151-52.)  Maintaining a fast pace at the tent welder position was crucial for the tent welders to receive their bonuses, and fellow employees complained that Greene was slowing down the team's pace of tent camper production.  (Id.)  All of which suggests that Greene was not performing his job as a tent welder satisfactorily.

Greene offers no evidence that he was performing his job satisfactorily.  Greene appears to indicate he was qualified for the tent welder position, but being qualified does not establish that he performed his job satisfactorily.  Greene offers no explanation for the mistakes he admitted he committed or for his slow pace except that he was not sufficiently trained.  But, if Greene did not have sufficient training, that fact by itself suggests he was not qualified for the position.  Greene offers no witness testimony, documents, or anything to suggest he was not performing at a slow pace or that a few mistakes were commonly accepted of all tent welders.

Simply put, Greene fails to submit any evidence that suggests he was performing his job satisfactorily.

Based on the evidence before it, this Court cannot say that Greene can establish that he performed his job satisfactorily to establish a prima facie case of race discrimination.

    2.  <u>Greene offers no evidence that Venture's reasons were pretextual.</u>

However, even if Greene could establish a prima facie case of race discrimination, and this Court believes he cannot, he must still posit evidence that suggests Venture's proffered reason is merely pretexutual.  Initially, the burden shifts to Venture to articulate a non-discriminatory justification for its action.  <u>Velez</u>, 442 F.3d at 1050.  If Venture offers a non-discriminatory justification, Greene is still required to present sufficient evidence to create a triable issue concerning whether Venture's proffered reason is merely pretextual.  <u>O'Neal</u>, 392 F.3d 909, 911 (7th Cir. 2004).

Venture offers non-discriminatory reasons for demoting Greene from tent camper welder to parts welder.  Venture claims it had to demote Greene because of his poor performance as a tent welder.  Greene committed several welding errors.  And Greene's co-workers and welding teammates complained that Greene was reducing their pace.

Because Venture has proffered legitimate nondiscriminatory reasons for its actions, Greene, then, has the burden to present some evidence to create a genuine issue of whether Venture's proffered reason is merely a pretext.  <u>O'Neil</u>, 392, F.3d at 911.  Pretext means something worse than a business error, such as deceit to cover one's tracks.  <u>Davis</u>, 368 F.3d at 784.  The focus of the pretext inquiry is whether the employer's stated reason was honest, not whether it was accurate, wise, or well considered.  <u>Id</u>.

Greene offers no evidence to establish that Venture's reasons are merely pretextual. Greene asserts that he was set up by Venture. Greene argues that he should have been allowed to shadow or receive more training before beginning his work as a tent welder. Essentially, Greene contends that it was the lack of training that caused him to not perform satisfactorily and that Venture purposely provided Greene with less training so that he would fail. And, Greene further posits that the only possibility for him being singled out in this manner was because he is an African American.

The only thing Greene offers to prove this conspiracy theory is his subjective belief. Greene has failed to point to any comments, letters, communications, actions by employees or supervisors, or anything to suggest Venture treated him differently because of his race.[4] Without any concrete evidence, Greene's subjective belief is nothing more than speculation. "Speculation does not create a genuine issue of fact; instead it creates a false issue, the demolition of which is a primary goal of summary judgment." Hedberg v. Ind. Bell Tel. Co., 47 F.3d 928, 932 (7th Cir. 1995). Greene cannot survive summary judgment because he offers no evidence to create a triable issue as to whether Venture's reasons were merely a pretext.

Greene indicates that some of his supervisors made derogatory comments about him because he is African American. Greene states that his immediate supervisor James Raymond stated, "I don't feel like babysitting Charles." (P's Resp. to Sum. Jdgt 1.) Shirk, the production

---

[4]Greene claims that he has witnesses to present to this Court, but Greene offers no affidavits, deposition testimony, or even hearsay evidence regarding these witnesses. The allegation that witnesses exist who will testify does not constitute evidence to create a genuine issue of fact to survive summary judgment.

supervisor, stated Greene would never receive a bonus position. (Id.) However, these comments are not racially derogatory and, in fact, have nothing to do with race on their face. Absent some other evidence, this Court fails to see how these comments constitute evidence of race discrimination let alone establish that Venture's reasons for demoting Greene were pretextual.

Finally, Greene argues that the fact that no African Americans work as tent welders or RV welders constitutes evidence that Venture's reason is merely pretextual. Greene's only source of these statistics is, again, his own testimony. Assuming Greene's statistics are accurate, it still does not prove Venture's reasons were pretextual.[5] "[A]bsent a link between this alleged discrimination and the employment decisions . . . is at best anecdotal." Millbrook v. IBP, Inc., 280 F.3d 1169, 1177 (7th Cir. 2002) (citations omitted). A plaintiff in Greene's position has to subject all of the employer's decision to statistical analysis to find out whether race makes a difference. Id. Without knowing how many RV or tent camper welder positions became available during the time frame, the number and race of candidates applying for the position, and the relative qualifications of such candidates, "[s]uch a list is next to worthless." Id. Absent more evidence, Greene's statistics do not create a reasonable inference that Venture's reasons for demoting Greene were pretextual.

In summary, because Greene cannot establish a prima facie case of race discrimination. Even if Greene could establish a prima facie case, he offers no evidence to establish that Venture's legitimate proffered reasons for demoting him were pretextual. Venture's motions for summary judgment should be **GRANTED**.

---

[5]This Court is being extremely lenient by even considering Greene's statistics. However, because they are insufficient even if they came from a reliable source other than Greene's own testimony, this Court will consider them anyway.

### III.    CONCLUSION

Venture's motion to strike should be **DENIED AS MOOT** [Doc. No.s 60]. With regard to summary judgment, Greene has failed to establish a prima facie case of race discrimination. Furthermore, even if Greene could establish a prima facie case, he has failed to offer any evidence that Venture's proffered reasons were merely pretextual. This Court **REPORTS AND RECOMMENDS** that Venture's motion for summary judgment with regards to Greene's Title VII and § 1981 claims should be **GRANTED** [Doc. No. 44]. The clerk should be instructed to term the case.

> **NOTICE IS HEREBY GIVEN that within ten (10) days after being served with a copy of this recommended disposition a party may serve and file specific, written objections to the proposed findings and/or recommendations. Fed. R. Civ. P. 72(b). FAILURE TO FILE OBJECTIONS WITHIN THE SPECIFIED TIME WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER**

**SO ORDERED.**

Dated this 26th Day of March, 2007.

                                S/Christopher A. Nuechterlein
                                Christopher A. Nuechterlein
                                United States Magistrate Judge

11